UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ROBERT GALLEGOS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | No. 2:24-cv-1595 DJC AC P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer. Pending before the court is plaintiff's first amended complaint ("FAC"). ECF No. 12.[1] For the reasons discussed below, the court will recommend that the FAC be dismissed without leave to amend for failure to state a claim.

I. Background

A. Original Complaint

The original complaint alleged that defendants California Department of Corrections and Rehabilitation ("CDCR"), Leech, Boxall and Prudhel violated plaintiff's rights when they held an

---

[1] Although the document is titled "Addendum," it appears to be a FAC filed in response to the court's September 3, 2025, order directing plaintiff to file an amended complaint or risk recommendation that this action be dismissed for failure to prosecute. See ECF No. 10. Accordingly, it is recommended that the "Addendum" be construed as plaintiff's FAC.

1

1  Institutional Classification Committee ("ICC") hearing without him and decided to remove him
2  from an Administrative Segregations Unit ("ASU")/Security Housing Unit ("SHU") and place
3  him into Building A4. ECF No.1 at 3-6. Plaintiff asserted that because he had about twenty
4  Inmate Manufactured Weapon ("IMW") violations within the past five years, prison policy
5  mandated he remain in Long Term SHU placement. Id. at 4-5. A couple of days after he
6  received an ICC hearing notice, plaintiff committed another violation for an IMW violation to
7  ensure he remained housed in a SHU. Id. Plaintiff planned to attend his ICC hearing but was
8  taken to the law library and not returned in time, despite multiple requests to be taken to his
9  hearing. Id. at 4. As plaintiff was escorted out of the law library, in waist chains and leg
10  restraints, he was informed that the ICC had met without him, decided he would be transferred to
11  building 4A, and that his property had been packed up and placed in his new cell. Id. Based on
12  prior attempts on his life, plaintiff started to panic and felt forced to act. Id. at 6. He was charged
13  with battery on a peace officer and was remanded back to ASU placement. Id. Also, while being
14  escorted down the stairs he back to ASU, he slipped, slid down at least three steps, and injured his
15  back. Id.

16         B.  Screening of Original Complaint

17  On screening, the court found the complaint failed to state any claims for relief against
18  any defendants. ECF No. 7. Specifically, plaintiff could not state a claim against CDCR because
19  of sovereign immunity under the Eleventh Amendment and because CDCR is not a "person" who
20  can be sued under § 1983. Id. at 3. Plaintiff failed to state a § 1983 claim based on alleged
21  violations of prison policy because a § 1983 claim must be based on a violation of a federal, not
22  state, right. Id. Plaintiff failed to state a Fourteenth Amendment due process claim because
23  plaintiff is not entitled to procedural protections before being removed from administrative
24  segregation and has no constitutional right to a particular classification. Id. at 4. Plaintiff also
25  failed to state an Eighth Amendment violation because his allegations were conclusory and at
26  most established negligence, and because he failed to name any of the actors involved as
27  defendants in the case, as required by Federal Rule of Civil Procedure 10(a). Id. at 4-5 & n.2.
28  ////

C. First Amended Complaint

In the FAC, plaintiff alleges that defendants Leech, Boxall, Prudhel, and Baxter violated his First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. ECF No. 12. Specifically, plaintiff alleges that defendant Boxall gave plaintiff a letter to appear before the Initial Classification Committee ("ICC"), at which point plaintiff informed him that he planned to attend. Id. at 2. At the time, plaintiff was suffering from mental health issues, including PTSD. Id. Fearing for his safety, he did what he had done many times before to secure continued Long Term SHU placement; he produced an inmate manufactured weapon ("IMW"). Id. at 2-3. This is one of many things—including being unsanitary, indecent, refusing to comply with CDCR rules and regulations, and expressing he will assault and batter staff—he has done to stay in secure housing. Id.

According to plaintiff, mandatory CDCR policy was violated when he was prevented from appearing at his ICC hearing, and when the ICC committee held a hearing without him present and tried to release him from SHU placement despite his actions requiring SHU placement. Id. at 3-4. He alleges that because of these unlawful actions, he was forced to commit assault and battery by "gassing" the officers who were escorting him. Id. at 4. After this, as he was escorted out of his new cell and down the stairs, which he had been required to climb and descend despite his mobility disabilities,[2] he slipped down three steps before he was saved by a sergeant, causing injury to his lower back. Id. at 5. To cover up defendants' misconduct, plaintiff was denied medical treatment. Id.

Plaintiff asserts that the First Amendment was violated when he was not afforded his right to petition the committee during his hearing, as required by policy, and his Fifth Amendment right was violated when his personal property was lost or stolen in the transfer. Id. at 5. Plaintiff

---

[2] According to plaintiff, his medical records had been unlawfully altered by a doctor. Id. at 4 (citing Gallegos v. CDCR, No. 2:24-cv-1596 TLN JDP P). The court takes judicial notice of the proceedings in Gallegos v. CDCR, No. 2:24-cv-1596 TLN JDP P, in which plaintiff pursues an Eighth Amendment claim against a doctor for removing plaintiff's prescriptions for durable medical equipment, despite plaintiff's continued need for them. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (citations omitted) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."); Fed. R. Evid. 201(b)(2)); see Gallegos v. CDCR, No. 2:24-cv-1596, ECF Nos. 17, 19.

1  further asserts that defendant Baxter violated his Eighth Amendment rights by participating in
2  plaintiff's ICC hearing knowing plaintiff was being denied his right to be present and
3  "intentionally provoked destabilizing factors" by proceeding without plaintiff. Id. According to
4  plaintiff, common sense shows defendant Baxter's actions would result in plaintiff self-harming.
5  Id.

6  Plaintiff also claims "all other defendants" violated his Eighth Amendment rights by
7  preventing him from participating in his ICC hearing and advocating for proper housing, which
8  puts him at risk of being murdered, raped, assaulted, and/or battered. Id. at 5-6. Plaintiff alleges
9  that CDCR's actions of forcing inmates from protective custody and sensitive needs yards into
10 general population created "unsafe envir[o]nment/Gladiator like conditions," which "has resulted
11 in about 90 Murders thus far and too many Rapes, GBI's [sic], Assaults, and Battery's [sic] etc. of
12 Inmates, Visitor's [sic], and Staff." Id. at 6-7. Plaintiff also notes that he disagrees with the
13 court's reliance on cases in the prior screening order that state prisoners have no constitutional
14 right to a particular classification, because prisons were required to establish and implement
15 classification to meet the Eighth Amendment standard. Id. at 6.

16 Lastly, plaintiff asserts his Fourteenth Amendment right "to be treated fairly, equally
17 under the Law Government/Institutional Rules, Regulations and Policy" was violated when
18 "several [i]ndividuals" were allowed to participate in their ICC hearings and have defendant
19 Baxter evaluate them at the hearing but plaintiff was not afforded the same opportunity, and when
20 others who had waived their right to be present at their ICC hearing were afforded an opportunity
21 to defend themselves in a written filing. Id. at 7.

22  II.   Statutory Screening of Prisoner Complaints

23 The court is required to screen complaints brought by prisoners seeking relief against "a
24 governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A
25 claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v.
26 Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on
27 an indisputably meritless legal theory or factual contentions that are baseless. Id., 490 U.S. at
28 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an

arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

III.     Failure to State a Claim

For the reasons discussed below, the plaintiff's FAC fails to state any claim against any defendant.

A. Defendants Leech and Pruhel

The FAC, which names but provides no factual allegations about defendants Leech's and Prudhel's involvement in any violation of plaintiff's federal rights, fails to state a claim against them. See Monell v. Department of Social Services, 436 U.S. 658 (1978) (the civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." (citation omitted)).

B. <u>Violations of State Prison Policy</u>

To the extent plaintiff continues to assert that violations of CDCR policy—such as policy requiring SHU placement based on multiple IMW violations, waiver of right to be present before an in absentia ICC hearing can be held, and/or notice of an adverse action/event and opportunity to respond in writing—amount to constitutional violations, he is mistaken. As previously explained, a state official's violation of state laws and/or regulations, including prison policy, is not grounds for a § 1983 claim unless it also violates a federal constitutional right. See <u>Case v. Kitsap County Sheriff's Dept.</u>, 249 F.3d 921, 930 (9th Cir. 2001) (quoting <u>Gardner v. Howard</u>, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")); <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); <u>Sweaney v. Ada Cty., Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); <u>Lovell v. Poway Unified Sch. Dist.</u>, 90 F.3d 367, 370 (9th Cir. 1996) (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress"). As discussed below, plaintiff has not stated any claims based on violations of any federal right.

C. <u>First Amendment Claim</u>

The FAC fails to state a First Amendment claim because his claim is not rooted in a violation of rights guaranteed by the First Amendment. <u>See</u> U.S. Const. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). Instead, it is based on a violation of a CDCR policy mandate, which as discussed above, does not give rise to a § 1983 claim.

D. <u>Fifth Amendment - Deprivation of Property Claim</u>

The FAC fails to state a claim under the Fifth Amendment because the Fifth Amendment Due Process Clause does not apply to state or local governments. See <u>Castillo v. McFadden</u>, 399

F.3d 993, 1002 n.5 (9th Cir. 2005) (quoting U.S. Const. amend XIV) (emphasis in original) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States: 'nor shall any State deprive any person of life, liberty, or property, without due process of law.'").

Even if the court considers plaintiff's allegations of deprivation of his personal property under the Fourteenth Amendment, the FAC nonetheless fails to state a claim because plaintiff does not allege *who* took his property. Even if he did, there is no § 1983 claim based on the unauthorized and random deprivation of property by prison officials, whether intentional or negligent, because California law provides an adequate post-deprivation remedy. See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§810-895); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional or negligent deprivations of property by a prison official that are unauthorized do not state a claim under § 1983 if the state provides an adequate post-deprivation remedy); cf. Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir. 1985) (the deprivation of property only states a claim for violation of due process if the deprivation was intentional and authorized; an authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.).

      E.  Eighth Amendment

          i.  Conditions of Confinement/Failure to Protect

The FAC fails to state an Eighth Amendment claim based on the conditions of plaintiff's confinement and/or the failure to protect plaintiff.

To state an Eighth Amendment claim, plaintiff must allege (1) an "objectively, 'sufficiently serious'" deprivation, and (2) that the prison official knew of the excessive risk to plaintiff's health or safety, disregarded the risk, and failed to take reasonable measures to lessen the substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834, 837, 847 (1994). The FAC meets neither requirement.

As with the original complaint, plaintiff continues to make conclusory and general assertions that he faced "imminent danger" and "unsafe" conditions, and that defendants knew of

1  these risks and "deliberately" and "intentionally" disregarded them.  The only new allegations he
2  provides in support of his Eighth Amendment claim are that there have been "90 Murders thus far
3  and too many Rapes, GBI's, Assaults and Battery's [sic] etc. of Inmates, Visitor's [sic] and Staff"
4  since CDCR has been deconstructing classifications, which has created an "unreasonably unsafe
5  envirment/Gladiator like conditions," and defendant Baxter knew participating in plaintiff's ICC
6  hearing without plaintiff present would cause plaintiff to self-harm.  ECF No. 12 at 5-7.  The
7  FAC provides no details about the alleged violent acts and no facts from which it could be
8  inferred that an increase in violence is attributable to the change in approach to classification.
9  Accordingly, amendment has not cured the conclusory nature of the allegations of danger.  The
10 allegations of the FAC do not support a conclusion that it was known or obvious to defendants
11 that plaintiff faced a serious risks of harm from being removed from the SHU.  Nor does the FAC
12 allege facts which support an inference that defendant Baxter knew plaintiff wanted to be present
13 during his ICC hearing, opposed removal from SHU placement, and would self-harm if he was
14 removed from SHU placement.

15      Because these allegations provide nothing more than speculative fear of harm, they are
16 insufficient to state a cognizable Eighth Amendment claim.  See Twombly, 550 U.S. at 555 (a
17 complaint must contain more than "a formulaic recitation of the elements of the cause of action;"
18 it must contain factual allegations sufficient "to raise a right to relief above the speculative
19 level"); see also Williams v. Wood, 223 Fed. Appx. 670, 671 (9th Cir. 2007) (speculative fear of
20 harm at the hands of other prisoners does not constitute a sufficiently substantial risk of harm to
21 future health and safety) (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

22      To the extent petitioner is attempting to re-allege an Eighth Amendment claim against
23 named defendants based on his slip and fall on the stair, he fails to state a claim because the FAC
24 does not specify whether and how any of the named defendants knew plaintiff had mobility
25 disabilities, and knew that his removal from the SHU and new placement would require the use of
26 stairs which created a serious risk of harm to plaintiff because of his disabilities.  Indeed, the FAC
27 affirmatively alleges that plaintiff's medical records had been unlawfully altered by a doctor to
28 ////

hide the fact that he had mobility disabilities, ECF No. 12 at 4,[3] which is inconsistent with the knowledge required to establish defendants' culpable state of mind. Moreover, as explained in the first screening order, "[t]o the extent plaintiff seeks to assert this claim against non-defendants, the officers and/or sergeants who were escorting him, he fails to do so . . . because they are not listed as defendants in this case" as required by Federal Rule of Civil Procedure 10(a), ECF No. 7 at 4 & n.1, and because he has not alleged any facts from which the court can infer that they were aware plaintiff suffered from a disability that affected his ability to safely use stairs and nonetheless required him to do so. Amendment has not cured these defects.

### ii. Medical Deliberate Indifference

To the extent plaintiff is attempting to make a medical deliberate indifference claim, he fails to do so. To state an Eighth Amendment medical deliberate indifference claim, an inmate must allege (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The FAC fails to state a cognizable medical deliberate indifference claim because the FAC does not allege who denied plaintiff medical care after he slipped and fell down three steps, that he had any serious medical need based on the alleged incident, and that whoever denied him medical care knew he had a serious medical need and purposefully failed to respond to this need, resulting in any harm to plaintiff based on the failure to treat—not merely harm resulting from the slip and fall.

### F. Fourteenth Amendment

#### i. Equal Protection Clause

The FAC fails to state a Fourteenth Amendment Equal Protection Clause claim. "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant

---

[3] Plaintiff is litigating this issue in another case. See n.2, supra.

1  acted with an intent or purpose to discriminate against him based upon his membership in a
2  protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing Barren v.
3  Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a plaintiff may state an equal
4  protection claim if he shows similarly situated individuals were intentionally treated differently
5  without a rational relationship to a legitimate government purpose.  Village of Willowbrook v.
6  Olech, 528 U.S. 562, 564 (2000) (citations omitted).

7        The FAC does not allege that plaintiff was a member of a protected class, nor does it
8  provide any factual allegations that he was similarly situated to the individuals who were allowed
9  to participate in their ICC hearings.  Moreover, plaintiff fails to explain how any of the named
10 defendants were involved in denying him any opportunity to be present during his ICC hearing.
11 As noted above, plaintiff does not mention defendants' Leech or Prudhel's involvement
12 whatsoever.  With respect to defendant Baxter, he only offers conclusory assertions that Baxter
13 knew plaintiff wanted to be present and allowed the ICC hearing to proceed without him.  There
14 are no allegations explaining if, when, and how defendant Baxter was made aware of plaintiff's
15 interest in participating in his ICC hearing, and how defendant Baxter prevented plaintiff from
16 participating in his hearing.  The same is true with respect to defendant Boxall's involvement.
17 Although plaintiff alleges, he told defendant Boxall that he will attend his ICC hearing when
18 defendant Boxall gave him notice of the hearing several days before, plaintiff does not allege how
19 defendant Boxall was involved in his ICC hearing and what defendant Boxall did to deny plaintiff
20 the opportunity to attend his ICC hearing.

21                   ii.    Due Process Clause

22       To the extent the FAC attempts to reallege a Fourteenth Amendment due process claim
23 based on the ICC's decision to remove plaintiff from SHU placement in his absence during his
24 ICC hearing and not afford him an opportunity to respond to the adverse decision in writing, he
25 fails to do so.  As the court explained in the prior screening order, a prisoner is entitled to some
26 minimal procedural protections when he is placed in administrative segregation.  See ECF No. 7
27 at 4, 8 (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)).  Here, plaintiff is not entitled to the
28 procedures in Hewitt because he alleges that he was removed from, not placed in, the SHU—a

term which he previously used interchangeably with the administrative segregation unit.

To the extent plaintiff alleges a violation of a state-created liberty interest based on the ICC hearing procedures, he is mistaken. "[T]o find a violation of a state-created liberty interest the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life.'" Chappell, 706 F.3d at 1064 (quoting Sandin v. Conner, 515 U.S. at 483-84). In making this determination, courts look to Eighth Amendment standards as well as prisoner's conditions of confinement, the duration of the sanction, and whether the sanctions will affect the length of the prisoners' sentence. See Brown v. Or. Dep't of Corr., 751 F.3d 983, 987 (9th Cir. 2014).

Here, as discussed above, plaintiff has only made conclusory allegations regarding the hardships he will suffer if he is removed from SHU placement. While bleak and disturbing, the conditions described, in and of themselves, are not a "dramatic departure" from the ordinary incidents of prison life and do not establish an "atypical and significant" hardship. Cf. Fiorito v. Entzel, No. 5:17-cv-2158 JFW KES, 2019 WL 1446403, at *5, 2019 U.S. Dist. LEXIS 55830, at *11 (C.D. Cal. Mar. 27, 2019) (citations omitted) ("Transfer to a prison with more violence and lockdowns [ ] does not amount to an atypical and significant hardship."), report and recommendation adopted, 2019 WL 1438067, 2019 U.S. Dist. LEXIS 55832 (C.D. Cal. Mar. 29, 2019), aff'd, 845 F. App'x 706 (9th Cir. 2021); Hubbard v. Warden of Wasco State Prison, No. 1:13-cv-0762 AWI DLB PC, 2015 WL 2345457, at *4, 2015 U.S. Dist. LEXIS 63565, at *9-10 (E.D. Cal. May 14, 2015) ("That a higher security yard . . . houses more violent inmates is not sufficient, in and of itself, to demonstrate that it is a condition which imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life."). Moreover, a step down from the SHU does not have the effect of extending the duration of plaintiff's prison sentence. To the contrary, plaintiff admits that remaining in the SHU will make it harder for him to be released from custody and likely *extend* the duration of his imprisonment. It follows that a step down to a less restrictive placement would have the opposite, better, or neutral effect on the duration of plaintiff's prison sentence.

Accordingly, the FAC fails to state a Fourteenth Amendment due process claim.

IV.     No Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

The undersigned finds that, as set forth above, the FAC fails to state a claim upon which relief may be granted. Plaintiff has already been given an opportunity to amend the complaint and advised what kind of information he needed to provide. Given plaintiff's failure to correct these defects and the negligeable new facts provided, it does not appear that further amendment would result in a cognizable claim. As a result, leave to amend would be futile and the complaint should be dismissed without leave to amend.

V.     Plain Language Summary of this Order for Party Proceeding Without a Lawyer

It is being recommended that your complaint be dismissed without leave to amend because the facts you have alleged do not show that any defendant violated your federal rights. It is recommended that you not have another opportunity to amend your claims because it is clear that additional facts could not fix their flaws.

VI.     Conclusion

In light of the above, IT IS HEREBY RECOMMENDED that the "Addendum" (ECF No. 12) be construed as a first amended complaint and be dismissed without leave to amend for failure to state a claim, and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified

////

////

12

time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 23, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE